# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND WRIGHT, | CASE NO. 1:07-cv-00462-AWI-WMW PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| KEN CLARK, et al., | |
| Defendants. | (Doc. 23) |
| _____/ | RESPONSE DUE WITHIN 30 DAYS |

Plaintiff Raymond Wright ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation at the California Substance Abuse Treatment Facility in Corcoran, California ("CSATF"). Plaintiff brings suit under section 1983 for violations of his rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

## I.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

///

///

1

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

**II.   <u>Factual Background</u>**

Plaintiff's dense, 23-page complaint exhaustively chronicles Plaintiff's disputes with the 40 prison staff members he names as defendants. Plaintiff has apparently filed numerous administrative grievances and lawsuits against prison staff and alleges that defendants responded by engaging in a campaign of retaliatory harassment.

Plaintiff's complaint begins by recounting his attempts to be granted single-cell status due to concerns that his safety would be threatened by a cell-mate. Plaintiff feared for his safety because he has had violent altercations with his four prior cell-mates. Plaintiff's request was denied and he was celled with inmate Arnold, whom Plaintiff describes as "a dangerous, mentally-deranged prisoner . . . who's prescribed 5 different anti-psychotic medications including court-ordered forced medication". (Compl. 6.)[1] Plaintiff filed another appeal for single-cell status but was denied again. In desperation, Plaintiff flooded the tier with his toilet and was placed in the Administrative Segregation ("Ad-Seg") in the Special Housing Unit ("SHU").

---

[1]Pincites to Plaintiff's complaint refer to the actual page number in the complaint, not the page numbers used by Plaintiff.

1    While housed in Ad-Seg, Plaintiff faced continued harassment from prison staff while he

2  attempted to prepare pleadings for his various pending lawsuits.  Plaintiff was denied access to the

3  law library, photocopies, and other requested legal materials that caused Plaintiff's lawsuits to be

4  dismissed because of his inability to meet filing deadlines.  Plaintiff alleges that the actions taken

5  against him were in retaliation for the numerous grievances he has filed against prison staff and/or

6  were racially motivated because Plaintiff is an African American.  In sum, Plaintiff alleges that

7  defendants interfered with his right of access to the courts, retaliated against him for engaging in

8  protected conduct, were deliberately indifferent to threats to his safety, and violated his rights under

9  the Equal Protection Clause.

10  **III.   Discussion**

11      **A.      Access to Courts Claims**

12    Plaintiff alleges that defendants obstructed Plaintiff's access to the courts by denying Plaintiff

13  time in the law library and withholding legal materials.  Prisoners have a constitutional right of

14  access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817,

15  821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context

16  of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v.

17  Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam).  To establish a violation of the right of access

18  to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional

19  requirement that flows from the standing doctrine and may not be waived.  See Lewis, 518 U.S. at

20  349.  An "actual injury" is "'actual prejudice with respect to contemplated or existing litigation, such

21  as the inability to meet a filing deadline or to present a claim.'"  Id. at 348.

22    Plaintiff alleges that Defendant Lefler refused to provide Plaintiff with photocopies of

23  documents, denied access to the law library and refused to provide requested legal materials.

24  Plaintiff also made numerous requests for law library access to Defendant Figueroa and was denied.

25  As a result, Plaintiff was unable to meet filing deadlines and a number of his cases were dismissed.

26  Plaintiff alleges that he also made requests for legal documents to Defendants Gonzalez, Hernandez,

27  and Rivera but they were either ignored or fulfilled in an untimely manner.  As a result, Plaintiff was

28  unable to oppose a summary judgment motion against him.  Therefore, Plaintiff has stated a

1  cognizable claim for interference with his right of access to the courts against Defendants Lefler,

2  Figueroa, Gonzalez, Hernandez and Rivera.

3      Plaintiff also alleges that Defendants Adams and Smart ignored or refused to fulfill Plaintiff's

4  requests for legal materials.  However, Plaintiff has not alleged that he suffered any actual prejudice

5  in any of his lawsuits due to these refusals.  Therefore, Plaintiff has failed to state claims against

6  Defendants Adams and Smart.

7      Plaintiff alleges that he filed administrative grievances because his legal materials requests

8  were being denied and that Defendant appeals reviewers R. Hall, Hacker, Reynoso, Clark, Jack

9  Batchelor, N. Grannis, and Scott Kernan denied his greivances.  It is not clear from Plaintiff's

10 complaint whether Plaintiff filed his grievances before or after his claims were dismissed.  If Plaintiff

11 filed his grievances after his claims were already dismissed and was only seeking redress through

12 the administrative grievances process, he does not state a constitutional claim against the appeals

13 reviewers because by then the constitutional violation had already occurred.  However, if Plaintiff

14 filed his administrative grievances before his claims were dismissed and was requesting that appeals

15 reviewers provide Plaintiff with his photocopies and other legal materials he does state a claim

16 because in that case, appeals reviewers are liable for knowing that Plaintiff's access to the courts was

17 being obstructed and they failed to prevent it.  Pursuant to this order, Plaintiff will be given the

18 opportunity to amend his complaint to clarify his factual allegations.  However, as it is, Plaintiff's

19 complaint fails to state claims against Defendants R. Hall, Hacker, Reynoso, Clark, Jack Batchelor,

20 N. Grannis, and Scott Kernan for obstructing Plaintiff's right of access to the courts.

21      **B.    Retaliation Claims**

22      Plaintiff alleges that defendants retaliated against Plaintiff because he filed grievances and

23 lawsuits against prison officials.  In the prison context, allegations of retaliation against a prisoner's

24 First Amendment rights to speech or to petition the government may support a section 1983 claim.

25 Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d

26 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First

27 Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

28 adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such

4

action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that numerous defendants took adverse action against him because he filed prison grievances. Defendant Lefler retaliated against Plaintiff by obstructing his access to the law library and legal materials because Plaintiff had filed grievances against her. Defendants Gonzalez and Rivera held Plaintiff in the ASU for an extended period of time in retaliation for filing grievances. Defendant Desbit conducted harassing searches of Plaintiff's cell and coerced the Institutional Gang Investigator to also conduct harassing searches of Plaintiff's cell. Defendant Desbit also refused to give Plaintiff access to the law library when he had "Priority Legal User" ("PLU") status and PLU ducats. Defendant Lima denied Plaintiff access to the law library. Defendant Peterson failed to open Plaintiff's cell to allow Plaintiff to go out for morning yard time. Plaintiff flicked his cell light on and off to indicate that he wanted to outside, but Defendant Peterson ignored Plaintiff and later lied by saying that Plaintiff was not flicking his cell light on and off. Defendants Pearce and Baires removed evidence relevant to one of Plaintiff's administrative appeals from the file in order to coerce Plaintiff into dropping his grievance against staff. Therefore, Plaintiff states cognizable claims for retaliation against Defendants Lefler, Gonzalez, Rivera, Desbit, Lima, Peterson, Pearce and Baires.

Plaintiff alleges that Defendants Pennington, Grannis, and Kernan directly contributed to the constitutional violations because they systematically denied Plaintiff's appeals thus allowing prison staff to harass and retaliate against Plaintiff. Plaintiff alleges that defendants' policy and practice of denying appeals that lead to the acts of retaliation against Plaintiff. Therefore, Plaintiff states a cognizable claim for retaliation against Defendants Pennington, Grannis, and Kernan.

## C.   Deliberate Indifference Claims

Plaintiff alleges that defendants were deliberately indifferent toward threats to Plaintiff's safety by double-celling Plaintiff. The Eighth Amendment prohibits the imposition of cruel and

1  unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards,

2  humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop,

3  404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two

4  requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious",

5  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991),

6  and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind",

7  Id. (quoting Wilson, 501 U.S. at 298).   The objective requirement that the deprivation be

8  "sufficiently serious" is met where the prison official's act or omission results in the denial of "the

9  minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347

10  (1981)).  The subjective requirement that the prison official has a "sufficiently culpable state of

11  mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety.

12  Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when

13  he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he

14  official must both be aware of facts from which the inference could be drawn that a substantial risk

15  of serious harm exists, and he must also draw the inference." Id.

16      "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse."

17  Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the

18  prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the

19  inmate's safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To demonstrate that a prison

20  official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show

21  that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must

22  both be aware of facts from which the inference could be drawn that a substantial risk of serious

23  harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.

24      Plaintiff alleges that Defendants Ward and Lais ordered Plaintiff to be double-celled despite

25  being informed about Plaintiff's altercations with his former cell mates. Plaintiff fails to satisfy the

26  objective prong of an Eighth Amendment violation because he fails to allege the existence of a

27  "serious threat" to his safety.  Plaintiff's fears regarding being double-celled were entirely

28  speculative. It appears that when Plaintiff was first given double-cell status, he did not know the

6

identity of his future cell-mate, therefore Plaintiff's fears were not based on a pre-existing conflict with a particular inmate. Nor does Plaintiff indicate that he was particularly susceptible to violent disputes with his cell-mates due to his personality or other characteristic. Plaintiff's speculation regarding his compatibility with his future, yet-to-be-determined cell mate does not constitute a "serious threat" to his safety, nor does defendants' refusal to buy into Plaintiff's arguments constitute "deliberate indifference". Therefore, Plaintiff fails to state a claim for deliberate indifference to threats to his safety against Defendants Ward and Lais.

Plaintiff alleges that after he was double-celled, he immediately filed an administrative appeal for single-cell status because he feared his new cell-mate, inmate Arnold. Plaintiff alleges that Defendants Smart, R. Hall, Ken Clark, and J. Burleson were deliberately indifferent for denying his appeal, and that Defendant officers McAfee and John Doe "displayed deliberate indifference toward my safety and livelihood after I'd repeatedly alerted them that I was in fear of my life if I remained housed with [his cell mate]". (Compl. 8.) However, Plaintiff also alleges that at the time Plaintiff was interviewed for his appeal, he admitted that he "was getting along with [his] cellmate for the approximately 3 weeks [they] were housed together". (Compl. 6.) Plaintiff stated that "I still wanted to be singled-celled because I haven't gotten along with one [cell mate] for longer than 3 months during [the] entire course of incarceration while double-celled". (Compl. 6-7.) Again, Plaintiff fails to allege that there was a "serious threat" to his safety. Nor does it constitute "deliberate indifference" when prison officials determine that a prisoner should not be single-celled when he reports that he is currently getting along with his cell mate but has vague and unsubstantiated fears regarding his future safety. Therefore, Plaintiff fails to state a cognizable claim for deliberate indifference against Defendants Smart, R. Hall, Ken Clark, J. Burleson, McAfee and John Doe.

D.      **Equal Protection Claims**

Plaintiff alleges that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated because White and Hispanic inmates received more favorable treatment than he did as an African American. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,

439 (1985). A plaintiff may establish an equal protection claim by showing that the defendant was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

Plaintiff alleges that Defendant Lefler only gave Plaintiff access to the law library once and forced to choose between going to the law library and enjoying yard time.  At the same time, Defendant Lefler allowed White and Hispanic inmates to have access to the law library more frequently and allowed them to go to the law library after they had yard time.

Plaintiff alleges Defendant Orozco racially discriminates against Afircan American inmates by only allowing White and Mexican porters out of their cells during lockdown but keeping Black inmate porters locked-down in their cells.  Defendant Orozco continually harassed Plaintiff out of retaliation by ordering Plaintiff (but not other inmates) to stand up and turn on the lights in his cell during cell counts and waking Plaintiff up in the middle of the night.  Defendant Orozco also destructively searched Plaintiff's cell, wrote Plaintiff up in disciplinary reports and recommended Plaintiff receive stricter punishments during rules violation hearings.

Plaintiff alleges that Defendant Miller also discriminates against African American inmates by letting White and Hispanic inmate porters out of their cells to work in the housing unit and pass items from cell to cell during lockdown while forcing African American inmates to remain in their cells.  Plaintiff also alleges that Defendant Miller intentionally left Plaintiff in his cell while the rest of the inmates were taken to get their dinner trays.

Therefore, Plaintiff states cognizable claims for violations of the Equal Protection Clause against Defendants Lefler, Orozco and Miller.

**E.     Due Process Claims**

Plaintiff alleges that the deficiencies in the procedural aspects of the prison administrative grievance process violated his rights under the Due Process Clause.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell,

8

418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff makes several allegations regarding the deficiencies of the prison grievance system. Plaintiff alleges that appeals reviewers based their decisions on fraudulent information and made incorrect statements regarding the double-cell policies at Corcoran. Although appeals reviewers can be held liable for causing and contributing to other constitutional violations, actions taken in reviewing appeals do not amount to Due Process violations. Therefore, Plaintiff fails to state any claims for violation of the Due Process Clause of the Fourteenth Amendment.

### F.   Claims Against Other Defendants

Plaintiff's complaint lacks sufficient allegations to state claims against any other defendants. As to these defendants, Plaintiff's allegations concern actions that are not constitutional violations and/or fail to allege a sufficient causal connection between the defendant and the alleged constitutional violation.

As for Plaintiff's allegations against supervisory personnel, they are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore,

when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that supervisory personnel are liable because their policies caused the constitutional violations.  Plaintiff is correct that supervisory personnel can be liable for the constitutional violations caused by their policies.  However, supervisory liability for policies is found only where the policy is "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation".  Plaintiff's complaint lacks any allegations regarding what Warden Clark or Adams' policies were, or how those policies caused or allowed the constitutional violations occurred.  Therefore, Plaintiff fails to state a cognizable claim against Defendants Ken Clark, Derral Adams and other supervisory personnel for constitutionally deficient prison policies.  Pursuant to this order, Plaintiff will be given the opportunity to amend his complaint.  If Plaintiff opts to amend his complaint to state cognizable claims against Defendants Ken Clark and Derral Adams, Plaintiff must allege what defendants' policy was and how that policy was in itself "a repudiation of constitutional rights" and was "the moving force of the constitutional violation".

**IV.   Conclusion and Order**

Plaintiff's complaint states cognizable claims against:  Defendants Lefler, Figueroa, Gonzalez, Hernandez and Rivera for interference with his right of access to the courts; Defendants Lefler, Gonzalez, Rivera, Desbit, Lima, Peterson, Pearce, Baires, Pennington, Grannis, and Kernan for retaliation; and Defendants Lefler, Orozco and Miller for violations of the Equal Protection

Clause.  Plaintiff's complaint fails to state claims against any other defendants.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff fifteen (15) summonses and fifteen (15) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . .", Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations omitted), meaning Plaintiff must provide enough allegations in his complaint to demonstrate why he is entitled to the relief that he seeks.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,

114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

      a.      File an amended complaint curing the deficiencies identified by the Court in this order, or

      b.      Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Lefler, Figueroa, Gonzalez, Hernandez and Rivera for interference with his right of access to the courts; Defendants Lefler, Gonzalez, Rivera, Desbit, Lima, Peterson, Pearce, Baires, Pennington, Grannis, and Kernan for retaliation; and Defendants Lefler, Orozco and Miller for violations of the Equal Protection Clause; and

3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:    February 9, 2009           /s/  William M. Wunderlich**
                                        UNITED STATES MAGISTRATE JUDGE