**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAYMOND WRIGHT, | ) Case No.: 1:07-cv-00462 - AWI - BAM |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING DEFENDANTS' MOTION FOR |
| v. | ) SUMMARY JUDGMENT |
| | ) |
| SCOTT KEBNAN, ET AL., | ) (ECF Nos. 111-114, 116, 127) |
| | ) |
| Defendant. | ) |
| | ) OBJECTIONS DUE WITHIN THIRTY DAYS |
| _____ | ) |

Raymond Wright ("Plaintiff" or "Wright") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983 against Defendants Baires, Figueroa, Gonzales, Grannis, Hernandez, Kernan, Lefler, Lima, Miller, Nesmith, Orozco, Pearce, Pennington, Peterson, and Rivera ("Defendants"). Now pending before the Court is Defendants' Motion for Summary Judgment.  ECF No. 111.

## **PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's Amended Complaint, filed March 27, 2008, against Defendants Lefler, Figueroa, Gonzales, Hernandez, and Rivera for obstructing Plaintiff's access to the courts;  and  Defendants Lefler, Gonzales, Rivera, Nesmith, Lima, Peterson, Pearce, Baires, Pennington, Grannis, and Kernan for retaliation in violation of the First Amendment; and Lefler,

1

Orozco, and Miller for violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.  ECF No. 23.

Defendants filed a motion for summary judgment on March 3, 2012.  ECF No. 111. Following various extensions of time, on April 16, 2012, Plaintiff filed an opposition to Defendants' Motion for Summary Judgment.  ECF No. 114.  On July 12, 2012, the Court provided Plaintiff with written notice of the requirements for opposing a motion for summary judgment, *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and granted Plaintiff thirty days to amend his opposition. ECF Nos. 119, 120.  Plaintiff filed an Amended Opposition to Defendants' Motion for Summary Judgment on November 10, 2012.  ECF No. 124.  On December 3, 2012, Defendants filed their Reply to Plaintiff's Opposition.  ECF No. 127, 128.

## SUMMARY JUDGMENT

### 1.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  FED. R. CIV. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider or by specifically referencing any other portions of the record for consideration.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact.  *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## SUMMARY OF RELEVATION ALLEGATIONS

The events at issue in the instant action allegedly occurred while Plaintiff was an inmate in the custody of the California Department of Correction and Rehabilitation (CDCR), housed at Corcoran State Prison, where plaintiff was incarcerated when the complaint was filed.  Plaintiff's complaint proceeds against prison employees as defendants and seeks money damages.  Plaintiff's allegations begin around November 30, 2006, and consist of the following:

1. Defendant Lefler denied Plaintiff's request for legal documents for all cases he was currently litigating and only allowed Plaintiff documents for cases in which Plaintiff had status as a Priority Legal User.  ECF No. 23 at 10.[1]

2. Defendant Lefler took twelve days to copy Plaintiff's brief for *Wright v. Crovetti*, No. 06-56610 (9th Cir. Feb 26, 2007) (hereinafter "Ninth Circuit Appeal"), and because of this delay, Plaintiff's appellate brief was late.  *Id.*

---

[1] Citations to Plaintiff's Amended Complaint and Amended Opposition to Defendant's Motion for Summary Judgment refer to the actual page number, not the page numbers used by Plaintiff.

3. Lefler took Plaintiff to the law library during A.M. Yard, but did not take Caucasian or Hispanic inmates to the law library during A.M. Yard. *Id.* at 13.

4. Defendant Lefler put Plaintiff on library restriction for 90 days.   *Id.*

5. Defendants Gonzales, Rivera, and Hernandez failed to provide Plaintiff with copies of Administrative Appeal Log #LAC-8-04-00714, and because of this Plaintiff lost *Wright v. Crovetti*, No. 2:06-cv-01393-DOC-SH (C.D. Cal. Jan. 4, 2007) (hereinafter "Central District Case"). *Id.* at 14.

6. Plaintiff received copies of Appeal Log #LAC-8-04-00714 on March 22, 2007. *Id.*

7. Plaintiff was required to remain in the Administrative Segregation Unit until May 3, 2007. *Id.*

8. Defendant Rivera ordered that Plaintiff be retained in the Administrative Segregation Unit until Plaintiff could be transferred to another institution because Plaintiff had an enemy in the facility. *Id.*

9. Plaintiff was released from the Administrative Segregation Unit on April 18, 2007.   *Id.* at 15.

10. Defendant Nesmith personally searched Plaintiff's cell, required him to face the wall during the search, and required Plaintiff to remove his photos of women on his cell wall.

11. Defendant Nesmith coerced the Institutional Gang Inspector into searching Plaintiff's cell. *Id.* at 20.

12. Defendants Peterson and Lima denied Plaintiff access to the law library. *Id.*

13. Defendant Peterson failed to open Plaintiff's cell for A.M. Yard. *Id.*

14. Defendants Pearce and Baires attempted to intimidate Plaintiff by having Pearce present during an appeal interview. *Id.* at 21.

15. A guard removed evidence from Plaintiff's appeal. *Id.*

16. Defendants Pennington, Grannis, and Kernan denied Plaintiff's appeal. *Id.* at 22.

17. Defendant Orozco made Plaintiff stand up and turn on his lights during the 5pm and 8pm count, but did not make other inmates do the same. *Id.* at 21.

18. Defendants Orozco and Miller do not let African American porters out of their cell during lockdown, but let Caucasian and Hispanic inmates out of their cell during lockdown. *Id.* at 21.

19. On June 23, 2007, inmates were let out of their cells in order to retrieve a tray, but Defendant Miller did not let Plaintiff out of his cell.  *Id.* at 23.

20. Defendant Miller made Plaintiff wait until other inmates returned from yard before letting Plaintiff into his cell.  *Id.*

## STATEMENT OF UNDISPUTED FACTS ("DUF")

1. At all times relevant to the action Plaintiff, Raymond Wright, P- 61138, was in the lawful custody of the California Department of Corrections and Rehabilitation.

2. Wright was the plaintiff in the case of *Wright v. Daley et al.*, No. 1:06-cv-00235-OWW-DLB (E.D. Cal. Aug. 1, 2007) (hereinafter "Eastern District Case").

3. In the Eastern District Case the Court dismissed Wright's complaint with leave to amend on February 14, 2007.

4. On February 26, 2007, Wright filed a motion requesting that the Court enter a final judgment so he could file an appeal.

5. Wright also filed a declaration in support of his motion on March 13, 2007.

6. On April 26, 2007, the Magistrate Judge recommended that the action be dismissed without prejudice for Wright's failure to comply with the February 14, 2007, order to file an amended complaint.

7. Wright was the plaintiff in the Ninth Circuit Appeal, which was an appeal from the denial of a preliminary injunction.

8. Wright's opening brief was due to be filed on December 13, 2006.

9. On December 11, 2006, Wright filed a request for an extension of time to file his opening brief.

10. Wright's opening brief was filed on December 26, 2006.

11. The answering brief was filed on January 25, 2007.

12. On February 2, 2007, Wright filed a motion to strike Defendants' response brief.

13. On February 26, 2007, the appeal was dismissed as moot because the District Court had dismissed the underlying case, the Central District Case.

14. In the Central District Case, Wright alleged that the Defendants used excessive force, failed to protect him, issued him a false disciplinary report, and failed to provide him with medical treatment.

15. Defendants moved to dismiss the case for Wright's failure to exhaust administrative remedies because Wright affirmatively alleged in the complaint that he had not exhausted his claims.

16. In his opposition, Wright argued that his administrative appeal Log No. 04-00714, exhausted his claims as to two of the Defendants.

17. The District Court and the Ninth Circuit rejected Wright's argument because Defendants' evidence showed that Wright had not exhausted any claim against any of the Defendants at the third level of review.

18. Library restrictions were placed on Wright on March 12, 2007, and were removed on March 30, 2007.

19. Defendant Lefler imposed the library restrictions because Wright verbally abused her and directed obscenities toward her on February 22, 2007, and again on March 12, 2007.

20. On January 2, 2007, Defendant Rivera served Wright with a notice that informed him that he had originally been placed in administrative segregation because he had enemy and for safety concerns. This notice also informed Wright that he was being retained in administrative segregation pending disposition of a serious rule violation report for battery on an inmate.

21. Wright was seen by a committee on January 10, 2007. The committee, which was chaired by Chief Deputy Warden Ward, decided to retain Wright in Administrative Segregation pending disposition of the rule violation report.

22. Following the disposition of the rule violation report, on April 11, 2007, Defendant Rivera served Wright with another notice that he would be remaining in administrative segregation until an administrative review of his program and housing unit needs could be completed.

23. Wright was released to Facility D on April 18, 2007, almost three weeks earlier than his minimum eligible release date.

24. Defendant Lefler scheduled inmates for library access upon receiving a request.

25. The Preferred Legal User ducat that Wright alleged was missing is still attached to Wright's appeal, Log No. 07-04048.

26. If an inmate was scheduled for yard access and library access at the same time, the inmate would be rescheduled for library, if he chose to go to the yard.

27. Legal library logs for the time Wright was confined in administrative segregation show that he was offered, but refused to go to the library on March 5, 2007.

28. Wright went to the library on April 17, 2007.

29. The library logs show that during the same time period inmate Rivera, (K-83929) went to the library three times; and inmate Perez, (V-51450) went to the library four times.

30. The library logs also show that inmates Hunter (C-99425), Stallworth (H-06834), and Smith (D-05564), who are all African American, all went to the library multiple times. Inmate Hunter accessed the library three times, inmate Stallworth two times, and inmate Smith four times.

31. The logs show that no inmate went to the library more than four times during the time Wright was confined in administrative segregation.  All inmates are required to stand, facing the cell door, with the light on, during the afternoon count that is conducted between 4pm and 5pm.

32. The Close A Custody count is conducted between 1100 and 1200 hours.

33. Close A Custody inmates are those considered to be most at risk of attempting to escape.

34. For any count that is not a mandatory standing count, inmates are required to show some skin. If an inmate is sleeping and is completely covered, the officer conducting the count will wake him up and require him to show some skin to verify that he is alive and in the cell.

35. Wright's disciplinary hearing was conducted by a Senior Hearing Officer who was a Lieutenant.

**DENIAL OF ACCES TO COURT CLAIM**

Inmates have a fundamental constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Hebbe v. Pliler*, 611 F.3d 1202, 1206 (9th Cir. 2010).  The right is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions.  *Lewis*, 518 U.S. at 354.  To bring a claim, the

plaintiff must have suffered an actual injury by being shut out of court.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351.

Inmates do not have the right to a law library or legal assistance.  *Lewis*, 518 U.S. at 351.  Law libraries and legal assistance programs are only the means of ensuring access to the courts.  *Id.* Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Id.*

### 1.    Plaintiff's Position

Plaintiff argues that Defendants Lefler, Figueroa, Gonzales, Hernandez, and Rivera all denied him access to court.  More specifically, Plaintiff argues that he asked Defendant Figueroa to use the library multiple times but was only allowed access once.  ECF No. 124 at 14.  Further, Plaintiff alleges that Defendant Lefler made him go to the law library during A.M. Yard.  *Id.*  Plaintiff alleges that Defendant Lefler only gave Plaintiff the legal documents related to cases that he had Priority Legal User Status (*Wright v. Shannon et al.*, No. 1:05-cv-01485-BAM (E.D. Cal. Feb. 1, 2012)), and the Ninth Circuit Appeal, even though Plaintiff requested all his legal documents.  *Id.* at 15.  Because of Defendant Lefler's failure to give Plaintiff all his legal documents, Plaintiff could not amend a complaint for the Eastern District Case.  *Id.* at 17.  Plaintiff then requested final judgment for the Eastern District Case in hopes that he would have his documents in time for the appeal.  *Id.*  Plaintiff requested documents for "Case Number 06-56117" after receiving Priority Legal Status, but Defendant Lefler did not give him the legal documents for this case.  *Id.* at 16.  Defendant Lefler took twelve days to copy a brief for the Ninth Circuit Appeal and because of this delay Plaintiff had to file a request for an extension of time.  *Id.* at 17.  Plaintiff alleges Defendant Lefler put Plaintiff on a 90 day library restriction for verbally abusing prison staff.  *Id.* at 18.  Plaintiff argues that Defendant Gonzales, Hernandez, and Rivera ignored his request for copies of an Administrative Appeal Log which caused Plaintiff to lose the Ninth Circuit Appeal.  *Id.* at 19.

### 2.    Defendants' Position

Defendants argue that Plaintiff suffered no actual injury.  More specifically, Defendants Lefler and Figueroa state that the Eastern District Case was dismissed with leave to amend.  Defs.' Mtn. at 5,

ECF No. 111-1. However, instead of filing an amended complaint, Plaintiff filed a motion requesting a final judgment so he could file an appeal to the Ninth Circuit. *Id.* Therefore, Defendants Lefler and Figueroa could not have prevented Plaintiff from filing an amended complaint because Plaintiff did not intend to file an amended complaint. *Id.* Further, the Ninth Circuit Appeal was dismissed because the District Court entered final judgment. *Id.* Therefore, Plaintiff could not have been injured even if he was denied access to the courts. *Id.*

Defendants Gonzales, Hernandez, and Rivera argue that the Central District Case was dismissed because of a failure to exhaust administrative remedies and not because of a failure to provide Plaintiff with an appeal log. *Id.* at 6. Therefore, Plaintiff did not suffer any actual injury for the alleged delay. *Id.*

### 3.   Analysis

#### i.   Lefler

Plaintiff fails to present evidence of actual injury. In relation to the Eastern District Case, Plaintiff alleges that "[b]ecause Lefler failed to issue all of my legal property to me, I could not comply with a February 14, 2007 court order to amend [the] complaint on a $20 million dollar lawsuit I have filed in this court." ECF No. 23 at 11. Plaintiff argues: "Consequently, I wound up losing that suit for failure to comply." *Id.* However, Plaintiff presents no evidence that Defendant Lefler's actions caused actual injury. The only evidence in the record is to the contrary. The complaint was dismissed with leave to amend. Rather than amend, Plaintiff requested the suit be dismissed so he could appeal. ECF No. 112-2 at 12.   Plaintiff does not allege that he planned to comply with the order to amend the complaint, nor does he dispute that he requested dismissal of the suit. Therefore, Plaintiff presents no evidence of actual injury.

In response to the Ninth Circuit Appeal, Plaintiff states that Defendant Lefler failed to copy Plaintiff's brief before a deadline. ECF No. 23 at 8. However, Plaintiff must produce evidence that Defendant Lefler caused Plaintiff injury. *See Stevenson v. Koskey*, 877 F.2d 1435, 1439 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). There are only two pieces of evidence produced relating to the Ninth Circuit Appeal. The first is Plaintiff's statement that the Respondents filed a reply brief requesting the appeal be dismissed because the brief was untimely. ECF No. 23 at

11. Second, the Ninth Circuit Appeal was dismissed because the lower court issued a final judgment making the Ninth Circuit Appeal moot. ECF No. 112-3 at 5. Plaintiff does not dispute these facts. *See* ECF No. 124 at 16-17. Because Plaintiff's appeal was dismissed before any issue of timeliness arose, Plaintiff was not injured by any delay in filing his briefing.

In response to "Case Number 06-56117", Plaintiff states that Defendant Lefler denied him access to legal documents needed for "Case Number 06-56117". ECF No. 23 at 10. However, Plaintiff fails to produce any evidence that would suggest the he was injured or impeded by this denial of access. Plaintiff does not point to any evidence that shows he missed a filing deadline or that his ability to litigate was hindered by this delay. Therefore, Defendant Lefler is entitled to summary judgment as to Plaintiff's access to court claim.

### ii.      Figueroa

Plaintiff claims that Defendant Figueroa also denied Plaintiff access to the courts. ECF No. 23 at 12. However, unlike Defendant Lefler, Plaintiff does not allege that Defendant Figueroa's failure to allow him library access caused harm to any of his pending cases. Plaintiff merely notes he asked Defendant Figueroa to use the law library on various occasions and those requests were not met. *Id.* Assuming Plaintiff meant to imply that Defendant Figueroa ignored these requests; Plaintiff does not present evidence that he was injured by Defendant Figueroa's treatment of his requests. Therefore, summary judgment for Defendant Figueroa should be granted for failure to identify a cognizable injury.

### iii.      Gonzales, Hernandez, and Rivera

Plaintiff does not produce evidence from which a reasonable trier of fact could establish that Defendants Gonzales, Hernandez, and Rivera caused Plaintiff actual injury. Plaintiff alleges that Defendants Gonzales, Hernandez, and Rivera failed to provide him with an Administrative Appeal Log #LAC-8-04-00714, which caused him to lose the Central District Case. ECF No. 23 at 14. However, Plaintiff's order of events shows otherwise. Plaintiff states that he lost his case in the Central District Court on January 4, 2007. *Id.* Thereafter, Plaintiff requested copies of his Administrative Appeal Log from Defendants Hernandez and Rivera on January 11 and February 11, 2007, respectively. *Id.* Plaintiff fails to produce any evidence showing that actions taken on January

11 and February 11, 2007 caused him to lose his Central District Case on January 4, 2007, a week earlier. Further, Plaintiff states that Defendant Rivera provided him copies of the Administrative Appeal Log on March 22, 2007. *Id.* Judgment on the appeal of Plaintiff's Central District Case was not entered until April 21, 2009, more than two years after Plaintiff received copies of his Administrative Appeal Log. ECF No. 112-4 at 13-14. Two years is sufficient time to review the Administrative Appeal Log.

Plaintiff argues that the appeal log would have "not only enabled me to defeat the defendant's motion for summary judgment but prevail on the merits of my claim." ECF No. 23 at 14. However, the Court in the Central District Case denied Plaintiff's motion to compel because it found the information contained in the Administrative Appeal Log irrelevant to the summary judgment. ECF No. 112-4 at 33. *See also* ECF 112-4 at 11. Plaintiff presents no evidence that the court would have changed its ruling on the relevancy of the document. Plaintiff's Central District Case was dismissed for Plaintiff's failure to exhaust administrative remedies. Aside from briefly mentioning an "exception criteria to the exhaustion doctrine," which Plaintiff gives no explanation of or authority for, Plaintiff does not present any evidence that this Administrative Appeal Log would have remedied Plaintiff's failure to exhaust claims at the third level of review. *See* ECF No. 23 at 14. Additionally, Plaintiff does not dispute that he failed to exhaust any of his claims at the third level of review, which is the reason the court granted summary judgment against the Plaintiff. *See* ECF No. 112-4 at 33; ECF No. 124 at 19-20. Therefore, summary judgment for Defendants Gonzales, Hernandez, and Rivera should be granted.

### iv.  Nesmith

Plaintiff argues that Defendant Nesmith denied his right to appeal by not returning an informal level appeal. ECF No. 124 at 3; ECF No. 23 at 20. Plaintiff may not pursue a claim for denial of access to the courts based on the failure of staff to respond to his appeals or based on the rejection of his appeals by staff. Plaintiff does not have a constitutionally protected right to have his internal appeals accepted or processed, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and because Plaintiff has not alleged any facts demonstrating that he suffered an actual injury to qualifying litigation, his claim fails as a matter of law. *Christopher*, 536

1   U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351.   There is no legitimate claim of entitlement to a

2   grievance procedure.   *See Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982).   Accordingly,

3   summary judgment should be granted for Defendant Nesmith on Plaintiff's denial of access to court

4   claim.

5   ## RETALIATION

6       Defendants contend that they are entitled to summary judgment with respect to Plaintiff's

7   claims that Defendants improperly retaliated against Plaintiff for filing inmate complaints by causing

8   his cell to be searched, keeping him in administrative segregation, denying him access to the courts,

9   and refusing access to the law library. ECF No. 127.

10      It is well established that a prisoner has a right under the First Amendment to file a prison

11  grievance.   *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).   A prisoner has a right to meaningful

12  access to the courts which includes the "broader right to petition the government for redress of his

13  grievances."   *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011); *Bradley v. Hall*, 64 F.3d

14  1276, 1279 (9th Cir. 1995) (overruled on other grounds by *Shaw v. Murphy*, 532 U.S. 223, 230 n.2,

15  121 S. Ct. 1475 n.2 (2001)).   Prison officials may not retaliate against prisoners for exercising their

16  right to file grievances.   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

17      A viable claim of retaliation in violation of the First Amendment consists of five elements:

18  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

19  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

20  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

21  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108,

22  1114 (9th Cir. 2012); *Brodheim*, 584 F.3d at 1269.

23      A plaintiff's suit for retaliation under section 1983 must allege that "he was retaliated against

24  for exercising his constitutional rights, and that the retaliatory action does not advance legitimate

25  penological goals, such as preserving institutional order and discipline."   *Barnett v. Centoni*, 31 F.3d

26  813, 816 (9th Cir. 1994).   The plaintiff does not need to show actual inhibited or suppressed speech,

27  but that there was a chilling effect upon his speech.   *Rhodes*, 408 F.3d at 569.   The burden is on the

28

plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

### 1.   Plaintiff's Position

Plaintiff argues that Defendant Nesmith searched Plaintiff's cell, made Plaintiff face the wall during the search, required Plaintiff to remove photos from his cell well, and coerced the Institutional Gang Investigator to search Plaintiff's cell. ECF No. 124 at 3. Plaintiff further argues that Defendant Peterson refused to let Plaintiff go to the law library and failed to open Plaintiff's door when others were being allowed out. *Id.* at 4, 5. Plaintiff argues that Defendants Pearce and Baires retaliated against Plaintiff by having Pearce present during an appeal interview. *Id.* at 6. Plaintiff makes various arguments that Defendants Orozco, Miller, and McAfee performed actions in retaliation against Plaintiff. *See id.* at 7-12. Plaintiff argues that Defendants Pennington, Grannis, and Kernan set a policy allowing constitutional violations. *Id.* at 9. Defendants Lefler and Lima retaliated against Plaintiff by denying him access to the courts. *Id.* at 14, 20. Plaintiff argues that Defendants Gonzalez and Rivera attempted to retain Plaintiff in the Administrative Segregation unit beyond the required time.

### 2.   Defendants' Position

Defendants' primary argument is that Plaintiff failed to present any evidence that Defendants' actions did not have a valid correctional purpose. ECF No. 127 at 5. More specifically, Defendants argue there was a valid reason for the library restriction, that Plaintiff verbally abused prison staff. *Id.*; ECF No. 111-1 at 14. Further, Defendants Gonzales and Rivera argue that they did not take any adverse action against Plaintiff and that they released Plaintiff three weeks prior to his minimum eligible release date. ECF No. 111-1 at 15. Defendants Nesmith and Peterson argue that Plaintiff failed to produce any evidence that their actions were motivated by an intent to retaliate. *Id.* at 16. According to Defendants, the failure to open a cell once is not sufficiently serious to chill a person's First Amendment right. *Id.* at 17. Defendants Pearce and Baires argue that there is no evidence they removed any documentation for the administrative appeal. *Id.* Defendants Pennington, Grannis, and Kernan argue that there is no causation between denying an administrative appeal and the alleged actions taken against Plaintiff.

### 3.    Analysis

#### i.    Nesmith

Plaintiff alleges that Defendant Nesmith coerced an Institutional Gang Investigator to search his cell, personally searched Plaintiff's cell, ordered Plaintiff to remove personal pictures of women from his cell walls, and required Plaintiff to sit facing the wall while his cell was searched in retaliation for Plaintiff's grievances.   ECF No. 23 at p. 20.   However, Plaintiff fails to produce any evidence that Defendant Nesmith's actions did not promote a legitimate correctional goal.   A plaintiff suing for retaliation must present evidence that the retaliatory action does not advance legitimate penological goals. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).   Prison officials are under the obligation to take reasonable measures to ensure the safety of the inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).   In order to accomplish this, unfettered access into an inmate's cell is required, as their cells are virtually the only place that inmates can hide dangerous contraband. *Id.* at 527.   Plaintiff here does not present any evidence that the alleged searched did not advance a legitimate penological purpose. *See* ECF No. 23 at 20.

Plaintiff's allegations that Defendant Nesmith required Plaintiff to remove photos from his wall and to sit facing a wall while Defendant Nesmith conducted a cell search are also insufficient. ECF No. 124 at 3; ECF No. 23 at 20.   Plaintiff fails to present any evidence that these actions were not safety procedures or did not promote any legitimate correctional purpose.   Therefore, summary judgment for Defendant Nesmith should be granted.

#### ii.    Peterson

Plaintiff alleges that Defendant Peterson failed to open Plaintiff's cell door, thereby depriving Plaintiff of an opportunity to go to the law library. ECF No. 23 at 20.   Here, Plaintiff fails to show that Peterson's actions did not promote a legitimate correctional goal.   A plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).     Plaintiff points to no evidence suggesting that Defendant Peterson lacked a legitimate reason for not refusing to permit inmates out during the alleged incident.   Plaintiff also alleges that Defendant Peterson failed to open Plaintiff's door when other inmates were being allowed out to go to Yard. ECF 23 at 20.   Again, there is an

absence of evidence in the record showing that there was no legitimate reason for not letting Plaintiff out of his cell.

Additionally, Plaintiff fails to present any evidence that Peterson retaliated because of Plaintiff's filing of lawsuits. Plaintiff merely concludes that "in retaliation of filing grievances and lawsuits against Corcoran staff and (CDCR) employee," Defendant Peterson did not let Plaintiff go to the law library. *Id.* There are no allegations suggesting retaliatory intent for Defendant Peterson's failure to let Plaintiff out of his cell. Plaintiff cannot simply testify to what Defendant Peterson is thinking. *See* FED. R. EVID. 701. Plaintiff does not allege that any grievances were filed against Defendant Peterson until after the two alleged events occurred. *Id.* Additionally, Plaintiff does not present any facts showing how Defendant Peterson might have known about other grievances filed by Plaintiff. Because Plaintiff presents no valid evidence that Peterson retaliated because of Plaintiff's protected conduct, summary judgment for Peterson should be granted.

### iii.   Pearce and Baires

Plaintiff alleges that Defendants Pearce and Baires retaliated against Plaintiff by having Defendant Pearce attend his appeal interview. ECF No. 124 at 6. The first requirement for a retaliation claim is that defendant must have taken some adverse conduct against defendant. *Rhodes*, 408 F.3d at 567. However, Plaintiff fails to state any adverse conduct. Plaintiff's only allegation of retaliation is that when Defendant Baires interviewed Plaintiff, Defendant Baires allowed Defendant Pearce to be present during the interview. ECF No. 23 at 21. Plaintiff offers no other evidence against Defendants Pearce and Baires. In fact, Plaintiff's testimony is devoid of any suggestion that Defendants Pearce and Baires ever made any statement or action that could be interpreted as "intimating that some form of punishment or adverse regulatory action would follow" the filing of the grievance. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

Plaintiff is also required to show that the actions of Defendants Pearce and Baires "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. Once again, Plaintiff does not point to evidence in the record to satisfy this requirement. Having the officer involved in the dispute present at a hearing does not meet the burden of showing no legitimate purpose.

Plaintiff argues that Defendants Pearce, Baires, "or some other official" retaliated against him by removing documents from Plaintiff's appeal.  ECF 124 at 6.  The only testimony relevant to this claim is: "Then Baires or Pearce or some other guard removed evidence from the appeal, consisting of the PLU Ducat dated August 18, 2007."  ECF 23 at 21.  Plaintiff alleges no evidence supporting that Defendants Pearce or Baires removed any documents.  This statement does not allege that Pearce or Baires removed the document; it only states that a guard removed the document, and that it may have been Pearce of Baires.  A sole statement that an unknown guard removed evidence is not sufficient to show that Defendants Baires or Pearce retaliated against Plaintiff.

For the foregoing reasons, Defendants Pearce and Baires are entitled to summary judgment on Plaintiff's retaliation claim.

### iv.   Orozco, Miller and McAfee

Plaintiff attempts to add an additional defendant and to expand his claims against Defendants Orozco and Miller to include retaliation claims.  ECF No. 124 at 7-12.  However, Plaintiff may not now expand the scope of this complaint via his Opposition to Defendants' Motion for Summary Judgment.  *Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996)).  Plaintiff's claims are confined to those screened and found cognizable by the Court and no claims of retaliation against Orozco and Miller have been found cognizable.  Further, McAfee is not a party to this litigation.  ECF No. 33.

### v.   Pennington, Grannis, and Kernan

Plaintiff alleges that because Defendants Pennington, Grannis, and Kernan denied his Administrative Appeal, they encouraged others to retaliate against him.  ECF No. 23 at 22.  However, Plaintiff fails to produce any evidence to show that there is a causal connection between Defendants' denial of Plaintiff's appeal and any alleged retaliation.  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The inquiry into causation must be individualized and focus on the duties and responsibilities of each

individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff alleges that Defendants Pennington, Grannis, and Kernan's denial of Appeal Log No. SATF-07-04048 caused them to directly participate in the deprivation of Plaintiff's constitutional rights and set up a policy allowing such constitutional right violations.   ECF No. 23 at 22.   However, the denial of Plaintiff's Administrative Appeal did not occur until February 23, 2008.   ECF No. 124 at 22.   All of the other constitutional violations alleged here occurred in 2006 and 2007.   Plaintiff has failed to show a causal connection because it is impossible for the denial of his appeal log to affect actions performed before that date.   Therefore, summary judgment for Defendants Pennington, Grannis, and Kernan should be granted.

### vi.   Lefler

Plaintiff alleges that Defendant Lefler denied him access to the prison library and legal materials and wrongfully placed him on library restrictions. ECF No. 23 at 13.   However, Plaintiff does not allege that this was in retaliation for protected conduct.   Further, Defendants present evidence that there was a legitimate penological reason for placing Plaintiff on library restriction. Library restrictions were placed on Plaintiff on March 12, 2007. DUF 19. The library restrictions were removed on March 30, 2007.   DUF 19.   Defendant Lefler imposed the library restrictions because Plaintiff verbally abused her and directed obscenities toward her on February 22, 2007, and again on March 12, 2007.   DUF 20; ECF No. 112-5 at 5.   Plaintiff does not dispute this fact and presents no evidence to the contrary.   The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).   Therefore, summary judgment for Lefler should be granted.

### vii.   Lima

According to Plaintiff, Defendant Lima refused to allow him go to the law library during lockdown in retaliation for filing grievances.   ECF No. 23 at 20.   In his opposition to the Motion, Plaintiff incorrectly argues that Defendant Lima did not seek summary judgment on Plaintiff's retaliation claim and thus his claim against Lima should go forward.   ECF No. 124 at 20.   However, Defendant Lima did move for summary judgment.   ECF No. 111 at 1.   A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Here, Defendants succeed in identifying the portions of the pleadings and affidavits which demonstrate the absence of a genuine issue of material fact. Specifically, Defendants point to Plaintiff's failure to produce evidence that there was no legitimate purpose for requiring Plaintiff to remain in his cell. ECF No. 111-1 at 14.

The entirety of Plaintiff's evidence related to this claim is the allegation that Defendant Lima denied him access to the law library. Again, Plaintiff fails to allege any facts that would suggest there was no legitimate reason for keeping him in his cell during lockdown. Therefore, summary judgment for Lima should be granted.

### viii.  Gonzalez and Rivera

In his amended complaint, Plaintiff alleges that Defendants Gonzalez and Rivera "attempted" to retain him in administrative segregation. ECF No. 23 at 14. According to Plaintiff, his determinate term of confinement in the Security Housing Unit was due to expire on May 3, 2007, but he was released to Facility D on April 18, 2007, three weeks early. *Id*. at 14-15. While not entirely clear, it appears that Plaintiff argues that Defendants Gonzales and Rivera tried to detain Plaintiff for a longer time period than was necessary. Defendants explain that on January 2, 2007, Defendant Rivera served Plaintiff with a notice that informed him that he had originally been placed in administrative segregation because he had enemy and safety concerns. DUF 20. This notice also informed Plaintiff that he was being retained in administrative segregation pending disposition of a serious rule violation report for battery on an inmate. DUF 20. The notice given by Defendant Rivera was for the purpose of informing Plaintiff that he was going to be seen by a classification committee which would determine whether he would be retained or released from administrative segregation. Cal. Code Regs. tit. 15 § 3338. Wright was seen by a committee on January 10, 2007. DUF 21. The committee, which was chaired by Chief Deputy Warden Ward, decided to retain Wright in segregation pending disposition of the serious rule violation report for battering another inmate. DUF 21.

Following the disposition of the rule violation report, on April 11, 2007, Defendant Rivera served Wright with another notice that he would be remaining in administrative segregation until

18

an administrative review of his program and housing unit needs could be completed.  DUF 22.

Plaintiff was released to Facility D, one week later, on April 18, 2007, almost three weeks earlier

than his minimum eligible release date.  DUF 23.

In order for a First Amendment retaliation claim to stand it must be shown that defendant

performed an adverse action.  *Rhodes*, 408 F.3d at 567.  Plaintiff alleges that Defendant Gonzales and

Defendant Rivera attempted to retain Plaintiff in the Administrative Segregation Unit beyond May 3,

2007 because of possible enemy concerns.  ECF No. 23 at 14-15.  However, Plaintiff states that he

was released from the Administrative Segregation Unit on April 18, 2007.  *Id.* at 15.  Being released

earlier than the initial required release date is not an adverse action. Therefore, Plaintiff fails to state

any adverse action taken against him by Defendant Gonzalez and Rivera, and summary judgment

should be granted.

## EQUAL PROTECTION

The Equal Protection Clause requires that all persons who are similarly situated should be

treated alike.  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (2001); *City of Cleburne v. Cleburne

Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  An equal protection claim may be

established by showing that the defendant intentionally discriminated against the plaintiff based on the

plaintiff's membership in a protected class, *Lee*, 250 F.3d at 686; *Barren v. Harrington*, 152 F.3d

1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without

a rational relationship to a legitimate state purpose.  *Village of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

### 1.    Plaintiff's Position

Plaintiff argues that Defendant Orozco's enforcement of the rule requiring Plaintiff to stand up

during the 5pm and 8pm count was a denial of equal protection because this rule was only enforced on

him.  ECF No. 124 at 7, 8.  Further, Defendants Orozco and Miller discriminated against him by not

letting African-American porters out of their cells during lock down.  *Id.* at 11, 12.  Plaintiff also

argues Defendant Orozco denied Plaintiff equal protection by stomping near Plaintiff, not responding

to an informal appeal, searching Plaintiff's cell, writing Plaintiff a disciplinary report, and being

present at a disciplinary hearing.  *Id.* at 8.  Defendant Miller denied Plaintiff equal protection by not

opening Plaintiff's cell door so he could get a dinner tray. *Id.* at 10. Plaintiff argues that Defendant Lefler denied him equal protection by making him choose between going to the yard and the law library even though Caucasian and Hispanic inmates were able to do both. *Id.* at 14.

### 2. Defendants' Position

Defendant Lefler argues that there is no evidence that he discriminated against African-Americans and that the library log shows that other African-American inmates accessed the library as often as any other inmates. ECF No. 111-1 at 20. Defendants Orozco and Miller argue that Plaintiff does not work as a porter and therefore Plaintiff lacks standing to litigate the claim that they refused to let African American porters out during lock down. *Id.* at 20, 21. Further, Defendants Miller and Orozco argue that Plaintiff fails to allege that the other actions taken by Defendants were performed with discriminatory intent. *Id.* at 21, 22. Finally, Defendant Miller argues that requiring Plaintiff to wait ten minutes to open his cell is not sufficient injury. ECF No. 127 at 7.

### 3. Analysis

#### i. Orozco and Miller

Plaintiff alleges that Defendant Orozco and Miller discriminated against him by not letting African American porters out of their cell during lock down. *Id.* at 11, 12. Article III of the United States Constitution limits the federal courts jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III, § 2, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The doctrine of standing ensures that the Courts do not go beyond this limitation. *Lujan*, 504 U.S. at 559. Before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing. *Whitmore*, 495 U.S. at 155. Constitutional standing requires injury-in-fact, causation, and redressability. *Id.* at 560-61. Specifically to meet the injury-in-fact requirement, "the party bringing suit must show that the action injures him in a concrete and personal way." *Id.* at 581. This requirement ensures that each party will be a sufficient advocate for the issue in dispute by making sure that they each have a stake in the outcome. *Id.*

Here, Plaintiff lacks standing for the discrimination claims against Defendants Orozco and Miller.  Plaintiff cannot present evidence that he was discriminated against when African-American porters were not let out of their cells.  Plaintiff does not present evidence that he was given a porter job or that he plans to work as a porter.  Therefore, the Court cannot allow Plaintiff to litigate a discrimination claim when he has not been personally injured by the alleged discrimination.

Plaintiff fails to produce evidence of discriminatory intent for the rest of his claims against Defendant Orozco and Miller.  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998).  Conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Plaintiff alleges that Defendant Orozco denied Plaintiff equal protection by stomping near Plaintiff, not responding to an informal appeal, searching Plaintiff's cell, making Plaintiff stand up for 5pm count, writing Plaintiff a disciplinary report, and being present at a disciplinary hearing.  ECF No. 23 at 21.  Plaintiff alleges that Defendant Miller also denied Plaintiff equal protection by not opening Plaintiff's cell door so he could get a dinner tray. *Id.* at 23.  Plaintiff alleges that everyone else was let out except for him and that Defendant Miller brought Plaintiff his tray as was normal procedure. *Id.* at 23.  Plaintiff does not present any evidence that any of these alleged adverse actions were taken because Plaintiff  was African American.  The only protected class Plaintiff seems to be alleging is a class of himself. *See e.g., Id.* at 21 ("singled me out"); *Id.* ("Orozco walked past other inmates and did not order them to stand up"); *Id.* ("but not the other Close "A" Custody Inmates"); *Id.* at 23 (stating that all the other inmates were let out but Plaintiff).  However, "an equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Thornton*, 425 F.3d at 1167.  Therefore, summary judgment for Defendants Orozco and Miller should be granted.

ii.     **Lefler**

Plaintiff argues that Defendant Lefler denied Plaintiff equal protection by making him choose between going to the yard and the law library even though Caucasian and Hispanic inmates were allowed to attend both.  ECF No. 124 at 14.  The entirety of Plaintiff's testimony on the issue states that: "Lefler escorted me to the the [sic] law library on April 17, 2007 simultaneously while my tier was having A.M. AD/SEG Yard in the Rec Cages, just to make me miss yard but took the white and Hispanic inmates on my tier to the law library 'after' yard was over, like it's procedurally done instead of forcing inmates to choose one or the other."  ECF No. 23 at 13.   The affidavit submitted by Defendant Lefler states: "If [an inmate's] scheduled time conflicted with the yard access schedule the inmate could choose [to go to] the yard and his law library access time would [then] be rescheduled for another time."  Plaintiff does not dispute this fact.  *See* ECF No. 124 at 14.  Taking both statements as true, Plaintiff was given the same opportunity as Caucasian and Hispanic inmates.  If Plaintiff observed Caucasian and Hispanic inmates not having to choose the law library over going to the yard, then these inmates may have chosen to reschedule their law library time.  Based on the facts above, Plaintiff was given the same option as the other inmates and was not denied equal protection.  Therefore, summary judgment for Defendant Lefler should be granted.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections

///

///

///

///

///

with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections with the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 2, 2013**                          /s/ *Barbara A. McAuliffe*
                                                       UNITED STATES MAGISTRATE JUDGE